Good afternoon. This is the hearing scheduled in the case of the United States v. Carey, Ninth Circuit, docket number 18-50393. And this hearing is in response to Mr. Carey's request that the court exercise its discretion to allow him to represent himself in this appeal. Let me begin by getting an appearance from the United States. This is Peter Coffin, United States. Okay. And counsel for Mr. Carey. Yes, this is Joanna Schiavone, currently appointed as counsel for the appellant, Michael Carey. All right. And I see Mr. Carey is on a video screen in front of me. And we're conducting this conference by video. The appellate commissioner, that's me, is appearing at the United States Court of Appeals courthouse in San Francisco. And we have a video link to the Federal Correctional Institute at Lompoc. And I can see Mr. Carey. Mr. Carey, can you see me and hear me? Yes, sir. Very well. Excellent. All right. So this proceeding is being recorded. So if there's any need to refer, although I doubt there will be any need to refer to the proceedings, a recording of the proceedings can be made available. And as the first order of business, Mr. Carey, because I'm going to be asking you some questions, I'm going to ask my courtroom deputy to administer the oath to you. Yes, sir. Please raise your right hand. Do you solemnly affirm that the statements you are about to make in the case now before this court will be the truth, the whole truth, and nothing but the truth? And this you do under the pains and penalties of perjury? I do. Please state and spell your name for the record. Michael Carey. C-A-R-E-Y. All right. Mr. Carey, do you have any physical or mental impairments that would affect your ability to participate fully and knowingly in these proceedings? Negative. Are you under the influence of any drug or alcohol? Negative. Are you able to hear me and to respond freely? Yes, sir. Okay. In response to your request to represent yourself in this appeal, the court has authorized me to conduct this hearing to make sure that you understand the dangers and disadvantages of self-representation on appeal and that your request is knowing, intelligent, and unequivocal. Do you understand that? I do understand. You have the right to counsel on this appeal. If you cannot afford to retain counsel, you are entitled to have counsel appointed to represent you at government expense, and you know you've had some of those. The court also has discretion to allow you to represent yourself if your request is knowing, intelligent, and unequivocal and is not intended to delay the In determining whether the court will allow you to represent yourself, the court will first inform you of the dangers and disadvantages of self-representation on appeal, second, inquire whether the issues are so complex that the assistance of counsel would aid the court in deciding the case, and third, inquire whether granting self-representation could unduly burden the court or undermine the integrity of the outcome. Do you understand those basic components of this hearing? I do, Your Honor. You also may withdraw your request to represent yourself, and in that case, you may continue with appointed counsel. You also are entitled to retain new counsel if you so choose. I am also, well, the Court of Appeals does not, however, allow for you to represent yourself and simultaneously have counsel represent you. So it's, in the district court, sometimes there's the notion of having a standby counsel. The Court of Appeals does not allow advisory or standby counsel. Do you understand that? I understand that. All right. So I have reviewed the docket in detail, the first opinion. I've reviewed what occurred after that. I've reviewed what's occurred with your prior appointed counsel, and I have read your response to the order asking you to explain your basis for seeking self-representation. And I know you have submitted it in writing, but I wanted to probe a little bit into your background, and I'd like to begin with your education. I know you said you went to college, but what college did you attend? I attended some college in San Diego, Southwestern College, a community college. And how long did you attend that college? A year and a half. All right. So you didn't get a intermediate degree or do any further higher education? That's correct. I did not get a degree. Okay. And can you review for me your job history? I've worked in civil engineering firms throughout Latin America, building roads. And in what capacity did you do that? Management. I worked below the owners and then made partner with the contracts that I've run. Did you manage a crew in doing road construction? Yes. I managed the business side of it in field in Mexico, and also managed the civil engineers that we flew in to operate. So I was a project manager. And how did you get that job, given your lack of specific training in civil engineering? Lots of networking and started at the ground floor and became friends with the owner and worked my way up. And my ability to speak Spanish, whereas the owner did not speak Spanish, was the biggest plus for him to hire me because I was able to translate and him and I would travel throughout Mexico. And after he understood that I could get the job done, he turned it over to me. And shortly thereafter, I became partner. And that name of that company was Exxime International based out of San Diego. And what years did you work there? I started doing that in 2002 and the company dissolved in 2007. And what was your next job after that? After that, I worked on mixed martial arts promotions. We had the first license from UFC to conduct events in Mexico with the use of their octagon. And we were building a company to sell it off to UFC. We started that in 2007. And I finished that in approximately 2009. And what was what came next? In 2010, I started a laser manufacturing company. One of our clients is Showcase Worldwide, who does retail fixtures. In 2010, I did the metal frames for the voting booths for the New York and the Florida primaries. And I did that all the way up until I lost bail in 2013. Okay, thank you. Have you ever represented yourself in a court proceeding? In a criminal trial? In a criminal case? Negative, I have not. All right. In any other court proceeding? A traffic violation, I have. Okay. All right. So I read your explanation of why you want to represent yourself. Yes, sir. And you've had, you have some really exceptionally talented appellate litigators who have been appointed to represent you, including your current counsel, who is very familiar with the inner workings of the Ninth Circuit and has a great deal of insight into how to construct a persuasive brief and I'm curious specifically why at this stage of the game you want to relinquish the assistance of counsel and represent yourself? As I wrote in the response to you, my case is fact-driven as opposed to law-driven. The only law that pertains to my issue is the Circuit Judge Gold opined in 2016. So after taking the plain hearing doctrine test and applying the facts, the case, it should be pretty easy to determine whether T14 calls were heard within or without plain hearing. And I believe that since it's facts-derived, I have the best understanding of this case because I've been studying this case for eight years. I know my discovery inside and out by memory as well as the intertwined case, U.S. v. Caridia. Knowing the facts and the discovery from their case and my case better than any other attorney, because this is the only case I've been working on for the last eight years, I feel that since it's facts-derived, I can best articulate the facts. Not to diminish what the attorneys bring to the table, but as far as the facts itself, and the facts is what the panel inquired at the oral arguments in 2016 in Pasadena. They wanted to know facts. They didn't ask necessarily about different laws that apply to it. The judges came up with the plain hearing doctrine test and they wanted facts. And the attorneys at that point were not able to deliver the facts. And I presented one attachment in my response to your honor that shows I understand the facts. I understand how they apply to plain hearing. So I don't believe that my lack of formal training in law will diminish my capacity to explain the facts because I know the facts inside and out. Have you considered the possibility of drafting some, your understanding of a factual argument and sending it to your attorney, your appointed counsel, and having them review that and perhaps incorporate that to a large extent in the brief? I have considered that and this decision I'm taking has not been taken one day to the next. I have consulted with my family and with my clergy and I feel at this point in the game, I understand the facts the best and I would prefer to be able to present those facts in a very articulate manner to the court. All right. Thank you for your explanation. And I know that in your counsel's response, she mentioned that she had discussed with you the dangers and disadvantages of self-representation on appeal. But I'm going to also do that now and I'm going so that we have on the record a clear explanation to you of those dangers and disadvantages so that the court can ensure that your decision is intelligent, knowing, and ultimately unequivocal. So I wanted to ask counsel, Mr. Koh and Ms. Schiavone, to pay attention during this part with particular care because I'm going to go through the dangers and disadvantages and then I'm going to ask counsel if there's anything else that they think ought to be explained to Mr. Carey to make sure that he understands all the dangers and all the disadvantages of self-representation. And Mr. Carey, if I... Yes, your honor. Thank you. And if I repeat things that you are aware of or if they seem very elementary to you, forgive me. I just want to make sure you understand everything. So here goes. As you know from your first appeal, an appeal is different from a trial. The proceedings occur mainly through written submissions called briefs and those briefs have to comply with specific court rules. If you represent yourself, you will be expected to comply with those rules, although much leeway is given to a pro se litigant. There are certain rules that you have to comply with and your appeal could be dismissed if you do not comply with various rules governing the way briefs have to be prepared and presented. Do you understand that? I do, sir. Thank you. On appeal, you have to obtain and review the transcript of the trial proceeding, the evidentiary hearing in your case, and identify the potential legal errors and factual errors committed at trial. The issues are limited to addressing only what occurred at trial in that hearing. The court of appeals does not consider new evidence. So if there's something that you wish had been presented in the evidentiary hearing but wasn't, you can't rely on that in your trial. I'm aware of rule 10 ES, thank you. I'm aware of rule 10 ES, thank you. Identifying appropriate issues requires legal knowledge and sophisticated analytic ability. If you fail to raise a particular issue, you may be barred from raising that issue again. Do you understand that? Yes. You also have to support any assertion of error with legal authority. That means you have to be able to understand the provisions of the Constitution, federal statutes and rules, and cases from the relevant courts that have addressed the issue. And I realize in this case, the parameters of your inquiry are pretty much defined by the opinion in Cary 1. Yes, sir. So I don't think that it's going to require much in the way of additional legal research, although you will need to address at least the cases that the district court relied on when it reached its conclusion, and any new authority that may have been announced after that case. That test requires familiarity with legal research techniques. Do you understand that? Yes, and the district court reiterated Cary 1. Yes. There are also strategic determinations that come into play in any appeal. This is a matter as to which appointed counsel are particularly adept, the way to structure the brief, the way to structure the arguments, the way to articulate the statement of the case, the facts in a manner that's most that kind of knack. It's an art of presentation, and it takes judgment and experience to know how to craft a brief. The lawyers of appointed counsel, especially somebody as accomplished as Ms. Schiavone, has spent years developing those skills. But if you represent yourself, you'll have to try and achieve the same level of excellence, but without that experience. You understand that? Ms. Schiavone has set a high bar, but I will try to duplicate her work and my previous counsel's work. Well, that's true. So, of course, it's important to be able to articulate your issues clearly and persuasively. I don't really have much question about that, having read your responses and your filings in court. I think you have proven yourself to be articulate and a very good writer, so I don't see that there's any problem in communicative skills. One of the dangers and disadvantages that I typically talk to is how challenging it is to do that. I think in your case, you are able to accomplish this task, even though you haven't had the training of appointed counsel. There are other difficulties that you will encounter trying to research and write and your appointed counsel would have, and you may have some assistance in the facility where you reside. And if you're working with another inmate, I don't know if that's the case, but if so, there's no guarantee that you will continue to have that assistance available to you. It may well be more difficult for you to communicate with the court via telephone, for example, than it would be for counsel, and that also may present an additional obstacle. Do you understand that notion that being incarcerated makes it more difficult for you to communicate with the court? I do understand, and I've only used Lexis well incarcerated, and I have no problem using LexisNexis provided to me by the institution. All right. Mr. Carey, in addition to the written submissions, the briefs that we've covered, the court allows oral argument in some cases. As you know, there was an oral argument in your first appeal, and the oral argument, as you know from viewing the oral argument, it's an opportunity for the parties to ensure that the judges understand the arguments. It's also an opportunity for the judges to ask specific pointed questions about the proper disposition of the appeal. Where a criminal defendant is represented by counsel, the court often schedules oral argument, but where a criminal defendant represents himself or herself and is incarcerated, the court is very unlikely to schedule oral argument. So by virtue of representing yourself, the chances of the court allowing oral argument in your case are diminished. I understand. That could make a difference in this case because of the factual development of the case. All right. If you're represented by counsel, counsel will prepare a brief, and if counsel prepares a brief, then you would not be able to file a supplemental brief. There are times, though, when counsel reviews the record and concludes that there are no non-frivolous issues. If counsel concludes that there are no non-frivolous issues, counsel would file a brief and say that, and then, but only then, would you be allowed to be meritorious. Do you understand that? I'm aware of that. I'm aware of the auditor's precedent. Yes, your honor. Very good. That was just a test to make sure you knew the name of the case. All right. So, Ms. Schiavone, I've now completed my description of the dangers and disadvantages of self-representation on appeal, and I now turn to you to see if there's anything else that you'd like to emphasize to Mr. Carey at this point. I guess I have a question for you, your honor. You explained, you know, the note I had was about the oral argument and the potential that you said the chance for oral argument is diminished. Is that something that Mr. Carey can make a specific request, and can, and have you seen arrangements been made to have an oral argument presentation by videoconference from someone who is an incarcerated inmate? Is that feasible, and can he make a request if he chooses, and if the court permits him to go forward? Yes, he can, in fact, make a request, but in my experience, it's extremely rare for the court to grant such a request. It has happened. Yeah, I've never seen it done, which is why I asked the question, just to know what you, in your experience, you meant by the chances are diminished. Right, so it's not impossible. The court has scheduled argument with a pro se litigant, even one incarcerated, but it's extremely rare, so, and just, I think by virtue of human nature, the notion of that it might be a very to schedule, in addition to that, try to hook in, as we're doing now, may, it just may make it more difficult for the court to agree to do that. I understand. Thank you. Other than that, I didn't have any additional notes beyond what you have already addressed. All right, and Mr. Coe, is there anything else that you wish to add to the colloquy? No, sir. Okay, thank you. All right. Okay, so, Mr. Carey, having now heard of all the dangers and disadvantages of self-representation on appeal, is it still your request that the court exercise its discretion to allow you to I make the request with eyes wide open. Good. All right. So, based upon what I've read and seen from you today, and based upon what Ms. Schiavone has submitted to the court as well, I'm going to prepare a report and recommendation recommending to the court that it exercise its discretion to allow you to represent yourself. Thank you. So, I know this case has been delayed, and I'm sure you're anxious to get the ball rolling on it. And Ms. Schiavone had asked in her submission that the court grant an additional 60 days for you to prepare an opening brief. And my question to you is, is that the amount of time that you think you need, or is there another amount of time that you think would be adequate and preferable? I believe 60 days upon receiving the case file from Ms. Schiavone will suffice. So, as soon as we get the case file delivered to a FCI law book, 60 days for me to file the brief is ample time. All right. And Ms. Schiavone, how soon do you think you could get those materials to him? So, there are some challenges in getting large volumes of materials delivered. I also have a number of the transcripts electronically, and I'll want to obviously get all that printed out in paper. So, I think I need probably at least 10 days to accomplish that. All right. So, I think the timing will work out without problem. The next step is for me to prepare a report and recommendation. And I intend to recommend granting your request. Ordinarily, I serve a copy of the report and recommendation on the appellant and allow time for the appellant to submit comments, objections. And I can do so here and give you some time to do that, or I can simply serve it on you and send it to the judges without giving you an opportunity to review it based upon the representation that it will recommend granting, based upon the facts of the case, the narrowness of the issue, your ability to articulate your thoughts and arguments in a way that I simply submit it to a three-judge panel as quickly as possible. I anticipate that they will accept my recommendation so we can move forward more quickly. That's option A. Option B is I can prepare the report and recommendation, serve it on you, and allow you 14, 21, 28 days to look at the report and recommendation with an opportunity to submit any comments or objections that you wish, and then submit the report and recommendation along with any submission that you wish to the panel for their consideration. So I don't mean to pressure you one way or the other. I'm sensitive to the fact that this case has been pending for quite a while. So if you have concerns about timing, we can do 90 days with the option A, and I will not need any extensions. I'll have everything ready to go prior to 90 days, but that'll give me a little cushion depending on the volume of the case file being delivered to me. Usually, the court turns these around pretty quickly. So the motions panel would probably well under a week, usually two days, two or three days in order for them to respond. Sometimes it would take up to a month. Well, here's what I think I'll do. I think I will set the briefing schedule at 90 days, at no more than 90 days, and I would urge you to get your brief submitted as soon as possible, and then I'll give the government 30 days after service of your brief for them to file their control. Yes, I intend to have it filed as soon as possible. Right, and I do agree with you that the scope here is fairly narrow. The legal argument is, the legal standard is very clear, and then the question is you marshaling the facts and explaining why the district court erred in its conclusion concerning the plain hearing. Yes. Notion, all right. Mr. Coe, do you have any comments about the proposed resolution of this matter? No, sir. All right. All right. Ms. Schiavone, anything further? No, your honor. Thank you. And Mr. Coe, anything at all further? No, sir. And Mr. Carey, anything further? Any questions? All right. All right. Well, I thank all of you for your appearance today, and I don't know if the folks at LOMPOC who organized this can hear me, but I do want to express the appreciation of our court to the staff at LOMPOC for making this video conference go so seamlessly. All right. Thank you. So this matter is then submitted pending the preparation of a reported recommendation, and this session is over. Thank you. Thank you. Thank you. This court for this session stands adjourned.
judges: Peter Shaw, Appellate Commissioner